## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYMAN AISHAT, | |
| Plaintiff, | |
| v. | Civil Action No. 18-CV-00143 (JEB) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants the U.S. Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Services ("USCIS"), U.S. Immigration and Customs Enforcement ("ICE"), Kirstjen M. Nielsen, DHS Secretary, L. Francis Cissna, USCIS Director, and Ronald D. Vitiello, ICE Deputy Director and Senior Official Performing the Duties of Director (collectively "Defendants"), respectfully move for summary judgment in Defendants' favor.

In support of this motion, Defendants submit the attached memorandum of law, statement of material facts, and agency declaration. Also attached is a proposed order.

Dated: November 21, 2018   Respectfully submitted,

         JESSIE K. LIU, D.C. Bar No. 472845
         United States Attorney

         DANIEL F. VAN HORN, D.C. Bar No. 924092
         Chief, Civil Division

    By:  /s/   *Scott Leeson Sroka*
       SCOTT LEESON SROKA, Member of New York Bar
       Assistant United States Attorney
       555 Fourth Street, N.W.
       Washington, D.C. 20530
       (202) 252-7113
       Scott.Sroka@usdoj.gov

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AYMAN AISHAT, | |
| Plaintiff, | |
| v. | Civil Action No. 18-CV-00143 (JEB) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case arises from Plaintiff Ayman Aishat's Freedom of Information Act ("FOIA") request directed to U.S. Citizenship and Immigration Services ("USCIS"). Defendants have reasonably complied with the request for records submitted by Plaintiff under FOIA. Having completed their search for responsive records subject to FOIA and withheld records under the appropriate FOIA exemptions, Defendants respectfully move the Court to grant summary judgment, pursuant to Rule 56(a), on all of Plaintiff's claims.[1]

### STATEMENT OF FACTS

Defendants incorporate herein the attached statement of material facts to which there is no genuine issue.

---

[1] The parties have agreed to narrow the issues to be presented for summary judgment to the withholdings applied to the bracketed sections only, contained on pages 4, 9, and 10 (attached hereto as Exhibit A) of the 18-page document produced by ICE to Plaintiff.

**STANDARDS OF REVIEW**

## I.    Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" when it "might affect the outcome of the suit under the governing law."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## II.   Discharge of FOIA Obligations

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Ryan v. FBI*, 174 F. Supp. 3d 486, 490 (D.D.C. 2016) (internal quotation marks omitted).  "When an agency moves for summary judgment on the grounds that it has discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester, and only after the agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate."  *Id.*

"An agency will be granted summary judgment on the adequacy of its search if it 'show[s] beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Id.*  "Adequacy 'is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case.'"  *Id.*  "[A] search may be reasonable if it includes all systems 'that are likely to turn up the information requested.'"  *Id.* at 490-91.

"To meet its burden and show adequacy, 'the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith.'"  *Id*. at 491.  "These declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *Id.* (internal quotation marks omitted).  "An

agency can show reasonableness in its affidavit by setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (internal quotation marks omitted).

"The agency need not search every record in the system or conduct a perfect search." *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, Civ. A. No. 15-1776 (RMC), 2017 WL 1207414, at *2 (D.D.C. Mar. 31, 2017). "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search." *Andrews v. Dep't of Justice*, 212 F. Supp. 3d 109, 113 (D.D.C. 2015) (internal quotation marks omitted). Also, "the [m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Id.* (internal quotation marks omitted).

## ARGUMENT

Defendants have appropriately searched for and provided records responsive to the request at issue, subject to the withholding of certain information pursuant to the applicable FOIA Exemptions. The adequacy of Defendants' searches is not in dispute and therefore is not addressed in this motion.

## I.   DEFENDANTS PROPERLY WITHHELD INFORMATION PURSUANT TO THE PRIVACY ACT.

When individuals request records about themselves from the Federal Bureau of Investigation ("FBI"), the FBI's Record/Information Dissemination Section ("RIDS") first considers the request under the Privacy Act, which generally provides individuals a right of access to records about them maintained in government files, unless the records are part of a system of records exempted from individual access. *See* 5 U.S.C. § 552a(d). Exemption (j)(2) exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws,

including police efforts to prevent, control, or reduce crime or to apprehend criminals." 5 U.S.C.
§ 552a(j)(2).

Here, the record that U.S. Immigration and Customs Enforcement ("ICE") sent to the FBI

for consultation is an Intelligence Information Report ("IIR"). IIRs are the vehicles through which

raw, unevaluated information is shared within the FBI and throughout the intelligence and law

enforcement communities, in compliance with the mandate of the president, Congress, attorney

general, and Office of the Director of National Intelligence that the FBI produce intelligence in

support of its own investigative mission, national intelligence priorities, and the needs of other

intelligence consumers. This IIR comprises investigative matters that are part of the FBI's primary

mission and compiled in fulfillment of the FBI's law enforcement, national security, and

intelligence duties. Although access to the record was denied under the Privacy Act, RIDS

processed the record under the access provisions of the FOIA to achieve maximum disclosure.

Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 7.

## II.   DEFENDANTS PROPERLY APPLIED FOIA EXEMPTION 1 IN RESPONDING TO PLAINTIFF'S FOIA REQUEST.

Exemption 1 under FOIA protects from disclosure information that has been deemed

classified "under criteria established by an Executive order to be kept secret in the interest of

national defense or foreign policy" and is "in fact properly classified pursuant to such Executive

order." 5 U.S.C. § 552(b)(1). Courts generally defer to agency expertise in national security cases.

*See, e.g., Students Against Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001) (holding

that because courts lack expertise in national security matters, they must give "substantial weight

to agency statements" (quoting *Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980)). The D.C.

Circuit has articulated an expansive standard of deference in national security cases, noting that

"little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).

The FBI's analysis of whether Exemption (b)(1) permits the withholding of agency information consists of two significant steps: (1) whether the information contained in the records qualifies for classification under the applicable Executive Order governing classification and protection of national security information; and (2) whether the information actually has been classified in compliance with the various substantive and procedural criteria of the Executive Order. Seidel Decl. ¶ 10.

Executive Order 13526 currently governs the classification and protection of information that affects the national security and prescribes the various substantive and procedural criteria for classifying information. The FBI is bound by the requirements of Executive Order 13526 when making classification determinations. *Id.*

For information to be properly classified, and thus properly withheld pursuant to Exemption 1, the information must meet the substantive requirements set forth in Executive Order 13526 § 1.1(a), which requires:

    (1)    an original classification authority must have classified the information;

    (2)    the information must be owned by, produced for, or be under the control of the United States Government;

    (3)    the information must fall within one or more of the categories of information listed in § 1.4 of [the] order; and

    (4)    the original classification authority must determine that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority must be able to identify or describe the damage.

Here, the FBI determined that the information withheld pursuant to Exemption 1 is under the control of the United States Government, falls within applicable categories of Executive Order 13526 § 1.4, and requires a classification marking at the SECRET level because the unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security. Seidel Decl. ¶ 12. *See* Executive Order 13526 § 1.2(a)(2).

In addition to these substantive requirements, certain procedural and administrative requirements set forth in Executive Order 13526 must be followed before information can be considered to be properly classified, such as proper identification and marking of documents. Accordingly, the FBI made certain that all procedural requirements of Executive Order 13526 were followed and specifically that:

(a)     each document was marked as required and stamped with the proper classification designation. *See* Executive Order 13526 § 1.6(a)(1)-(5);

(b)     each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in Executive Order § 13526 § 1.5(b). *See* Executive Order 13526 § 1.6(a)(5)(c);

(c)     the prohibitions and limitations on classification specified in Executive Order 13526 § 1.7 were adhered to;

(d)     the declassification policies set forth in Executive Order 13526 §§ 3.1 and 3.3 were followed; and

(e)     any reasonably segregable portions of these classified documents that did not meet the standards for classification under Executive Order 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

Seidel Decl. ¶ 13.

The FBI examined the information withheld in this case pursuant to Exemption 1 in light of the body of information available to it concerning the national defense and foreign relations of

the United States. This information was not examined in isolation. Instead, each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States would have upon the information the FBI examined, and upon attempts by a hostile entity to analyze such information. *Id.* ¶ 14.

In those instances where, in the FBI's judgment, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, the FBI exercised its prerogative as an original classification authority, designated that information as classified in the interest of national security, and invoked Exemption 1 to prevent disclosure. Likewise, the justifications for the withheld classified information were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by other hostile intelligence entities. The FBI determined that any greater specificity in the descriptions and justifications set forth with respect to information relating to intelligence sources and methods of the United States could reasonably be expected to jeopardize the national security of the United States. As demonstrated here, all information withheld pursuant to Exemption 1 has been appropriately classified pursuant to Executive Order 13526. *Id.* ¶ 15.

Executive Order 13526 § 1.4(c) authorizes the classification of "intelligence activities (including covert action), intelligence sources or methods, and cryptology," in order to protect

classified intelligence sources, methods, and activities utilized by the FBI for gathering intelligence data. *Id.* ¶ 16.

An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics: (1) the intelligence activity or method – and information generated by it – is needed by U.S. Intelligence/Counterintelligence agencies to carry out their missions; and (2) confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved. Here, the FBI withheld information pursuant to Exemption 1 to protect intelligence methods utilized by the FBI for gathering intelligence data. *Id.* ¶ 17.

The classified material here would, if disclosed, reveal actual intelligence activities and methods used by the FBI against specific targets of counterintelligence investigations or operations; identify a target or a counterintelligence investigation; or disclose the intelligence-gathering capabilities of the activities or methods directed at specific targets. The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals. *Id.* ¶ 18.

The FBI protected information under FOIA Exemption 1 and § 1.4(c) because the information is classified and the release of such information could reasonably be expected to cause serious damage to the national security for the following reasons: (a) disclosure would allow hostile entities to discover the current intelligence-gathering methods used; (b) disclosure would reveal current specific targets of the FBI's national security investigations; and (c) disclosure

would reveal the determination of criteria used and priorities assigned to current intelligence or counterintelligence investigations. With the aid of this detailed information, hostile entities could develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-gathering capabilities. This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of national security and criminal laws of the United States. This information is currently and properly classified at the "Secret" level, in accordance with Executive Order 13526 § 1.4(c), and is exempt from disclosure pursuant to Exemption 1, as well as Exemption 3/National Security Act of 1947, 50 U.S.C. § 3024(i)(1), as explained *infra*. Seidel Decl. ¶ 19.

The classified information withheld within the bracketed responsive pages contain detailed intelligence activity information gathered or compiled by the FBI on a specific individual or organization of national security interest. The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against specific targets; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of specific targets during specific periods of time. This information is properly classified at the "Secret" level and withheld pursuant to Executive Order 13526 § 1.4(c), and is exempt from disclosure pursuant to Exemption 1. *Id.* ¶ 20.

The FBI determined that the release of this information could permit hostile persons, entities, and foreign governments to appraise the scope, focus, location, target, and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information. This revelation of intelligence activities and methods would

severely disrupt the FBI's intelligence-gathering capabilities and could cause serious damage to our national security. This information is properly classified at the "Secret" level and is withheld pursuant to Executive Order 13526 § 1.4(c). This, the information is exempt from disclosure pursuant to Exemption 1. Seidel Decl. ¶ 21.

## III.   DEFENDANTS PROPERLY APPLIED FOIA EXEMPTION 3 IN RESPONDING TO PLAINTIFF'S FOIA REQUEST.

Exemption 3 exempts from disclosure information which is

specifically exempted from disclosure by statute . . . provided that such statute (A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

The FBI asserted Exemption 3, in conjunction with Exemption 1, to protect information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("the NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1), which provides the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." As relevant to U.S.C. § 552(b)(3)(B), the NSA was enacted before the date of enactment of the OPEN FOIA Act of 2009. On its face, this federal statute leaves no discretion to the DNI about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. Seidel Decl. ¶ 23; *see CIA v. Sims*, 471 U.S. 159 (1985).

In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential

Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(1). The FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence sources and methods. Seidel Decl. ¶ 24.

As described above, Congress enacted the NSA, as amended by the IRTPA, to protect the IC's sources and methods of gathering intelligence. Disclosure of such information presents the potential for individuals to develop and implement countermeasures, which would result in the loss of significant intelligence information, relied upon by national policymakers and the IC. Given that Congress specifically prohibited the disclosure of information pertaining to intelligence sources and methods used by the IC as a whole, the FBI determined that its intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff. Thus, the FBI is prohibited from disclosing information falling under 50 U.S.C. § 3024(i)(1). Accordingly, the FBI properly protected this information pursuant to Exemption 3. Seidel Decl. ¶ 25.

## IV. DEFENDANTS PROPERLY APPLIED FOIA EXEMPTION 7(E) IN RESPONDING TO PLAINTIFF'S FOIA REQUEST.

As a threshold matter, FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms. 5 U.S.C. § 522(b)(7). Law enforcement within the meaning of FOIA Exemption 7 includes enforcement pursuant to both civil and criminal statutes. *See, e.g., Tax Analysts v. Internal Revenue Service*, 294 F.3d 71, 76-77 (D.C. Cir. 2002).

Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982); *see, e.g., Abramson v. FBI*, 456 U.S. 615, 622 (1982) (explaining that in order to assert "Exemption 7 privilege" requested record

must have been compiled for law enforcement purposes). Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duties of that agency.

Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM") and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and further the foreign intelligence objectives of the United States. Seidel Decl. ¶ 27.

Here, the referred document responsive to Plaintiff's request was compiled in the course of multiple FBI investigations of subjects for possible violations of federal crimes or threats to the national security. Thus, the information in this record was compiled for law enforcement purposes and falls squarely within the FBI's law enforcement mission to investigate criminal, national security, and/or intelligence matters. Therefore, the information readily meets the threshold requirement of Exemption 7. *Id.* ¶ 28.

5 U.S.C. § 552(b)(7)(E) provides protection for:

> law enforcement records which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

Here, Exemption 7(E) has been asserted to protect information from this record, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the

law. This exemption affords protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures. Seidel Decl. ¶ 30.

Within the bracketed portions of the responsive record, the FBI applied Exemption 7(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement and intelligence-gathering missions, and also to non-public details about techniques and procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption 7(E) to protect the IIR identification number within the responsive record. *Id.* ¶ 31.

The FBI asserted Exemption 7(E) to protect an IIR identification number associated with a specific intelligence report. The identification number in this case could lead to individuals using that information to acquire the intelligence information report itself. IIRs contain sensitive law enforcement techniques that the FBI uses to obtain invaluable intelligence information in current criminal and national security investigations. While the techniques may be known by the public in a general sense, the technical analysis of these sensitive law enforcement techniques and intelligence-gathering activities, to include the specifics of how and in what setting they are employed, is not generally known to the public. Revealing the IIR identification number could potentially reveal the techniques, potential targets of the techniques, and/or the nature of the information gleaned via their use in the context of this material which would effectively reveal specifics of how, and in what settings, the techniques are employed. As a result, criminal targets would be better able to avoid detection by developing countermeasures to circumvent the ability of law

enforcement officials to use the techniques, thus rendering them useless to the FBI and other law enforcement agencies. Revealing details about these sensitive law enforcement techniques would compromise a crucial means of collecting intelligence information and severely hamper the FBI's law enforcement efforts to detect and apprehend individuals who seek to violate the United States criminal and national security laws. Therefore, this information is appropriately exempt from disclosure pursuant to Exemption 7(E). *Id.* ¶ 32.

## V.    DEFENDANTS COMPLIED WITH FOIA'S SEGREGABILITY REQUIREMENT

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

As discussed previously, ICE referred to the FBI an 18-page record, of which only three pages contained information responsive to Plaintiff. At the litigation stage, these pages were processed to achieve maximum disclosure consistent with the access provisions of FOIA. Every effort was made to provide Plaintiff with all reasonably segregable portions of releasable material. RIDS determined that the bracketed information on these pages was either fully covered by one or

more of the cited FOIA exemptions, or determined that any non-exempt information on these pages

was so intertwined with exempt material that no information could be reasonably segregated for

release. Any further segregation of this intertwined material would employ finite resources only

to produce disjointed words, phrases, or sentences, that taken separately or together, would have

minimal or no informational content. To the extent that non-exempt information exists within the

withheld material, it could not be segregated for release without jeopardizing the exempt

information and risking its public disclosure. Seidel Decl. ¶ 33.

## CONCLUSION

For the foregoing reasons, the Court should conclude that Defendants complied with their

FOIA obligations, and grant summary judgment in Defendants' favor.

Dated: November 21, 2018            Respectfully submitted,

                                    JESSIE K. LIU, D.C. Bar No. 472845
                                    United States Attorney

                                    DANIEL F. VAN HORN, D.C. Bar No. 924092
                                    Chief, Civil Division

                        By:         /s/   *Scott Leeson Sroka*
                                    _____
                                    SCOTT LEESON SROKA, Member of New York Bar
                                    Assistant United States Attorney
                                    555 Fourth Street, N.W.
                                    Washington, D.C. 20530
                                    (202) 252-7113
                                    Scott.Sroka@usdoj.gov

                                    *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I  HEREBY CERTIFY that on this 21st day of November 2018, that service of the

foregoing motion has been made on counsel of record through the Court's ECF system.


 /s/ *Scott Leeson Sroka*
SCOTT LEESON SROKA
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Office: (202) 252-7113
Fax: (202) 252-2599
Email: Scott.Sroka@usdoj.gov