# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AYMAN AISHAT,                                    )
                                                 )
          Plaintiff,                             )
                                                 )
     v.                                          )      Civil Action No. 18-cv-00143 (JEB)
                                                 )
U.S. DEPARTMENT OF HOMELAND                      )
SECURITY, et al.,                                )
                                                 )
          Defendants.                            )
_____)

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Assistant Section Chief ("ASC") of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Winchester, Virginia and, in the absence of RIDS Section Chief, David M. Hardy, I serve as Acting Section Chief for RIDS. I have held this position since June 26, 2016. I joined the FBI in September 2011, and prior to my current position, I was the Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act ("FOIA") Litigation Unit from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA") litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to

1

September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army

Litigation Division where I oversaw FOIA/PA litigation for the U.S. Army. I am an attorney

registered in the State of Ohio and the District of Columbia.

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise

approximately 237 employees who staff a total of twelve (12) Federal Bureau of Investigation

Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective

mission is to effectively plan, develop, direct, and manage responses to requests for access to

FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of

2007, OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of

1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures;

judicial decisions; and Presidential and Congressional directives. My responsibilities as Acting

Section Chief also include the review of FBI information for classification purposes as mandated

by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), and the preparation of declarations

in support of Exemption 1 claims asserted under the FOIA. The Section Chief, RIDS has been

designated by the Attorney General of the United States as an original classification authority

and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. Accordingly,

when serving in the position of the Section Chief, RIDS, in the absence of the incumbent, I

assume the designated original classification and declassification authority. The statements

contained in this declaration are based upon my personal knowledge, upon information provided

to me in my official capacity, and upon conclusions and determinations reached and made in

accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5

U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the

FBI's handling of a consultation received from the U.S. Immigration and Customs Enforcement

("ICE") following Plaintiff's submission of a Freedom of Information/Privacy Acts ("FOIPA")

request to that agency.

(4)     On or about February 2, 2018, ICE referred one document totaling 18 pages for

consultation to the FBI.  However, only select bracketed information on pages 4, 9, and 10 was

determined to be responsive to Plaintiff's request.  Therefore, this declaration addresses only the

FBI's withholdings within the bracketed information.  In accordance with *Vaughn v. Rosen*, 484

F.2d 820 (D.C. Cir. 1973), the FBI submits this declaration in support of Defendants' Motion for

Summary Judgment, in order to provide the Court and Plaintiff with the FBI's justification for

withholding information in part pursuant to Privacy Exemption (j)(2), 5 U.S.C. § 552a (j)(2) and

FOIA Exemptions 1, 3, and 7(E), 5 U.S.C. § 552 (b)(1), (b)(3), and (b)(7)(E).

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE PRIVACY ACT

(5)     When individuals request records about themselves from the FBI, RIDS first

considers the request under the Privacy Act, which generally provides individuals a right of

access to records about them maintained in government files, unless the records are part of a

system of records exempted from individual access.  *See* 5 U.S.C. § 552a(d).  Exemption (j)(2)

exempts from mandatory disclosure systems of records "maintained by an agency or component

thereof which performs as its principal function any activity pertaining to the enforcement of

criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend

criminals…" 5 U.S.C. § 522a(j)(2).

(6)     Under the Privacy Act, agencies may promulgate rules to exempt systems of

records from various provisions of the Act, to include individual requests for access or

amendment.  *See* 5 U.S.C. § 552a(d), (j) and (k).  Accordingly, the DOJ promulgated regulations exempting certain systems of records from individual access, *inter alia*, under the Privacy Act, 5 U.S.C. § 552a(d).  As relevant here, the FBI is a criminal and regulatory enforcement agency within DOJ responsible for enforcing federal laws, and DOJ has exempted FBI law enforcement investigative records maintained in the Central Record System[1] from the Privacy Act's access provision pursuant to (j)(2).  In other words, pursuant to 28 C.F.R. § 16.96(a)(1), the Plaintiff has no individual right of access to investigative records about himself under the Privacy Act. Therefore, Plaintiff's request was processed under the provisions of the FOIA.

(7)     The record ICE sent to the FBI for consultation is an Intelligence Information Report ("IIR").  IIRs are the vehicles through which raw, unevaluated information is shared within the FBI and throughout the intelligence and law enforcement communities, in compliance with the mandate of the President, Congress, Attorney General, and Office of the Director of National Intelligence that the FBI produce intelligence in support of its own investigative mission, national intelligence priorities, and the needs of other intelligence consumers.  This IIR comprises investigative matters that are part of the FBI's primary mission and compiled in fulfillment of the FBI's law enforcement, national security, and intelligence duties.  Although access to the record was denied under the Privacy Act, RIDS processed the record under the access provisions of the FOIA to achieve maximum disclosure.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(8)     The record sent to the FBI from ICE was processed to achieve maximum disclosure consistent with the access provisions of the FOIA.  Every effort was made to provide

---

[1] Privacy Act System of Records FBI-002, 63 FR 8671 (1998) (last publication of complete notice).

4

Plaintiff with all reasonably segregable non-exempt information in the responsive record.  No

reasonably segregable, non-exempt portions have been withheld from Plaintiff.  Further

description of the information withheld, beyond what is provided in this declaration, could

identify the actual exempt information the FBI has protected.  The exemptions asserted by the

FBI as grounds for non-disclosure of portions of the record are as follows: FOIA Exemptions 1,

3, and 7(E), 5 U.S.C. § 552 (b)(1), (b)(3), and (b)(7)(E).

### EXEMPTION (b)(1) – CLASSIFIED INFORMATION

(9)     The FBI relied on Exemption (b)(1) to protect currently and properly classified

information on the three (3) pages at issue here.  Exemption (b)(1) protects from disclosure

records that are:

> (A)     specifically authorized under criteria established by an Executive Order to
> be kept secret in the interest of national defense or foreign policy; and
>
> (B)     are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1).

(10)     The FBI's analysis of whether Exemption (b)(1) permits the withholding of

agency information consists of two significant steps.  The FBI must determine first whether the

information contained in the records qualifies for classification under the applicable Executive

Order governing classification and protection of national security[2] information, and second

whether the information actually has been classified in compliance with the various substantive

and procedural criteria of the Executive Order ("E.O.").  E.O. 13526 presently governs the

classification and protection of information that affects the national security, and prescribes the

various substantive and procedural criteria for classifying information.  I am bound by the

---

[2] Section 6.1 (cc) of Executive Order 13526, § 6.1(cc) defines "National Security" as "the
national defense or foreign relations of the United States."

requirements of E.O. 13526 when making classification determinations.

(11)    For information to be properly classified, and thus properly withheld pursuant to Exemption (b)(1), the information must meet the substantive requirements set forth in E.O. 13526 § 1.1(a), which requires:

(1)    an original classification authority must have classified the information;

(2)    the information must be owned by, produced by or for, or be under the control of the United States Government;

(3)    the information must fall within one or more of the categories of information listed in § 1.4 of [the] order; and

(4)    the original classification authority must determine that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority must be able to identify or describe the damage.

(12)    In my capacity as an original classification authority, I have determined that the information withheld pursuant to Exemption (b)(1) here is under the control of the United States Government, falls within applicable categories of E.O. 13526 § 1.4, and requires a classification marking at the SECRET level because the unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security. *See* E.O. 13526 § 1.2(a)(2).

(13)    In addition to these substantive requirements, certain procedural and administrative requirements set forth in E.O. 13526 must be followed before information can be considered to be properly classified, such as proper identification and marking of documents. Accordingly, I made certain that all procedural requirements of E.O. 13526 were followed and specifically that:

(a)    each document was marked as required and stamped with the proper classification designation. *See* E.O. 13526 § 1.6(a)(1) – (5);

(b)    each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 13526 § 1.5(b). *See* E.O. 13526 § 1.6(a)(5)(c);

6

(c)     the prohibitions and limitations on classification specified in E.O. 13526 § 1.7 were adhered to.

(d)     the declassification policies set forth in E.O. 13526 §§ 3.1 and 3.3 were followed; and

(e)     any reasonably segregable portions of these classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

## Defendant's Burden of Establishing Exemption (b)(1) Claims

(14)     I examined the information withheld in this case pursuant to Exemption (b)(1) in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States would have upon the information I examined, and upon attempts by a hostile entity to analyze such information.

(15)     In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority, designated that information as classified in the interest of national security, and invoked Exemption (b)(1) of the FOIA to prevent disclosure. Likewise, the justifications for the withheld classified information were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in

the public domain, as well as information likely known or suspected by other hostile intelligence

entities.  It is my judgment that any greater specificity in the descriptions and justifications set

forth with respect to information relating to intelligence sources and methods of the United

States could reasonably be expected to jeopardize the national security of the United States.  As

demonstrated here, all information withheld pursuant to FOIA Exemption (b)(1) has been

appropriately classified pursuant to E.O. 13526.

### E.O. 13526, § 1.4(c)—Intelligence Activities, Sources, and Methods

(16)    E.O. 13,526 § 1.4(c) authorizes the classification of "intelligence activities

(including covert action), intelligence sources or methods, and cryptology," in order to protect

classified intelligence sources, methods, and activities utilized by the FBI for gathering

intelligence data.

(17)    An intelligence activity or method includes any intelligence action or technique

utilized by the FBI against a targeted individual or organization that has been determined to be of

national security interest.  An intelligence method is used to indicate any procedure (human or

non-human) utilized to obtain information concerning such individual or organization.  An

intelligence activity or method has two characteristics.  First, the intelligence activity or method -

- and information generated by it -- is needed by U. S. Intelligence/Counterintelligence agencies

to carry out their missions.  Second, confidentiality must be maintained with respect to the

activity or method if the viability, productivity and usefulness of its information is to be

preserved.  Information was withheld pursuant to Exemption (b)(1) to protect intelligence

methods utilized by the FBI for gathering intelligence data.

(18)    The classified material here would, if disclosed, reveal actual intelligence

activities and methods used by the FBI against specific targets of counterintelligence

8

investigations or operations; identify a target of a counterintelligence investigation; or disclose the intelligence-gathering capabilities of the activities or methods directed at specific targets. The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.

(19)    The FBI protected information under FOIA Exemption (b)(1) and § 1.4(c) because the information is classified and the release of such information could reasonably be expected to cause serious damage to the national security for the following reasons: (a) disclosure would allow hostile entities to discover the current intelligence-gathering methods used; (b) disclosure would reveal current specific targets of FBI's national security investigations; and (c) disclosure would reveal the determination of criteria used and priorities assigned to current intelligence or counterintelligence investigations.  With the aid of this detailed information, hostile entities could develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-gathering capabilities.  This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of national security and criminal laws of the United States.  This information is currently and properly classified at the "Secret" level, in accordance with E.O. 13,526 § 1.4(c), and is exempt from disclosure pursuant to Exemption (b)(1), as well Exemption (b)(3)/National Security Act of 1947, 50 U.S.C. § 3024(i)(1), as explained *infra*.

## Detailed Intelligence Activities

(20)    The classified information withheld within the bracketed responsive pages contain detailed intelligence activity information gathered or compiled by the FBI on a specific individual or organization of national security interest.  The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal

the actual intelligence activity or method utilized by the FBI against specific targets; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of specific targets during specific periods of time. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 13,526 § 1.4(c), and is exempt from disclosure pursuant to Exemption (b)(1).

(21)    It is my determination that the release of this information could permit hostile persons, entities, and foreign governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information. This revelation of intelligence activities and methods would severely disrupt the FBI's intelligence-gathering capabilities and could cause serious damage to our national security. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 13526, § 1.4(c). Thus, the information is exempt from disclosure pursuant to Exemption (b)(1).[3]

### EXEMPTION (b)(3) - INFORMATION PROTECTED BY STATUTE

(22)    5 U.S.C. § 552(b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute… provided that such statute (A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

### National Security Act of 1947 per 50 U.S.C. § 3024(i)(1)

(23)    The FBI asserted Exemption (b)(3), in conjunction with Exemption (b)(1), to

---

[3] The FBI cited (b)(1) on pages 4, 9, and 10.

protect information pursuant to Section 102A(i)(1) of the NSA of 1947, as amended by the

Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024 (i)(1),

which provides that the Director of National Intelligence ("DNI") "shall protect from

unauthorized disclosure intelligence sources and methods." As relevant to U.S.C. § 552

(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the

OPEN FOIA Act of 2009. On its face, this federal statute leaves no discretion to the DNI about

withholding from the public information about intelligence sources and methods. Thus, the

protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute.

*See CIA v. Sims*, 471 U.S. 159 (1985).

(24)    In order to fulfill its obligation of protecting intelligence sources and methods, the

DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC")

for the classification of information under applicable laws, Executive Orders, or other

Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. §

3024(i)(1). The FBI is one of 17 member agencies comprising the IC, and as such must protect

intelligence sources and methods.

(25)    As described above, Congress enacted the NSA, as amended by the IRTPA, to

protect the IC's sources and methods of gathering intelligence. Disclosure of such information

presents the potential for individuals to develop and implement countermeasures, which would

result in the loss of significant intelligence information, relied upon by national policymakers

and the IC. Given that Congress specifically prohibited the disclosure of information pertaining

to intelligence sources and methods used by the IC as a whole, I have determined that the FBI's

intelligence sources and methods would be revealed if any of the withheld information is

disclosed to Plaintiff. Thus, the FBI is prohibited from disclosing information falling under 50

U.S.C. § 3024(i)(1).  Accordingly, the FBI properly protected this information pursuant to Exemption (b)(3).[4]

## **EXEMPTION 7 THRESHOLD**

(26)    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the record or information at issue were compiled for law enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the record at issue is related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency.

(27)    Pursuant to 28 USC §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and further the foreign intelligence objectives of the United States.

(28)    Here, the referred document responsive to Plaintiff's request was compiled in the course of multiple FBI investigations of subjects for possible violations of federal crimes or threats to the national security.  Thus, the information in this record was compiled for law enforcement purposes and falls squarely within the FBI's law enforcement mission to investigate criminal, national security, and/or intelligence matters.  Therefore, the information readily meets the threshold requirement of Exemption (b)(7).

---

[4] The FBI cited (b)(3) on pages 4, 9, and 10.

## EXEMPTION (b)(7)(E) – INVESTIGATIVE TECHNIQUES AND PROCEDURES

(29)   5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

> law enforcement records which would disclose techniques and
> procedures for law enforcement investigations or prosecutions, or
> would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to
> risk circumvention of the law.

(30)   Exemption (b)(7)(E) has been asserted to protect information from this record, the

release of which would disclose techniques and/or procedures for law enforcement investigations

or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions

if such disclosure could reasonably be expected to risk circumvention of the law. This exemption

affords protection to techniques and procedures used in law enforcement investigations; it

protects techniques and procedures that are not well-known to the public as well as non-public

details about the use of well-known techniques and procedures.

(31)   Within the bracketed portions of the responsive record, Exemption (b)(7)(E) has

been applied to non-public investigative techniques and procedures utilized by the FBI to pursue

its law enforcement and intelligence gathering missions, and also to non-public details about

techniques and procedures that are otherwise known to the public.  Specifically, the FBI asserted

Exemption (b)(7)(E) to protect the IIR identification number within the responsive record.

### Intelligence Information Reports

(32)   The FBI asserted Exemption (b)(7)(E) to protect an IIR identification number

associated with a specific intelligence report.  The identification numbers for specific reports are

not generally known to the public.  Revealing the IIR identification number in this case could

lead to individuals using that information to acquire the intelligence information report itself.

IIRs contain sensitive law enforcement techniques that the FBI uses to obtain invaluable

13

intelligence information in current criminal and national security investigations. While the techniques may be known by the public in a general sense, the technical analysis of these sensitive law enforcement techniques and intelligence gathering activities, to include the specifics of how and in what setting they are employed, is not generally known to the public. Revealing the IIR identification number could potentially reveal the techniques, potential targets of the techniques, and/or the nature of the information gleaned via their use in the context of this material which would effectively reveal specifics of how, and in what settings, the techniques are employed. As a result, criminal targets would be better able to avoid detection by developing countermeasures to circumvent the ability of law enforcement officials to use the techniques, thus rendering them useless to the FBI and other law enforcement agencies. Revealing details about these sensitive law enforcement techniques would compromise a crucial means of collecting intelligence information and severely hamper the FBI's law enforcement efforts to detect and apprehend individuals who seek to violate the United States criminal and national security laws; therefore, this information is appropriately exempt form disclosure pursuant to Exemption (b)(7)(E).[5]

## SEGREGABILITY

(33)     As discussed previously, ICE referred to the FBI an 18 page record subject to the FOIA, of which only 3 pages contained information responsive to Plaintiff. At the litigation stage, these pages were processed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all reasonably segregable portions of releasable material. RIDS determined that the bracketed information on these pages was either fully covered by one or more of the cited FOIA exemptions, or

---

[5] The FBI cited (b)(7)(E) on page 10.

determined that any non-exempt information on these pages was so intertwined with exempt

material, that no information could be reasonably segregated for release. Any further

segregation of this intertwined material would employ finite resources only to produce disjointed

words, phrases, or sentences, that taken separately or together, would have minimal or no

informational content. To the extent that non-exempt information exists within the withheld

material, it could not be segregated for release without jeopardizing the exempt information and

risking its public disclosure.

**CONCLUSION**

(34)     The FBI closely reviewed the referred document and has provided its response to

ICE. The FBI properly denied access to this document pursuant to Privacy Act Exemption (j)(2),

5 U.S.C. § 552a (j)(2) and has processed the responsive document under the access provisions of

the FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA

Exemptions 1, 3, and (7)(E), 5 U.S.C. § 552 (b)(1), (b)(3), and (b)(7)(E). The FBI carefully

examined the responsive document and determined that the information withheld, if disclosed,

would reasonably be expected to reveal information that would cause serious damage to national

security; would violate federal statutes governing release of information on national security

operations; and/or would disclose techniques and procedures for law enforcement investigations

or prosecutions, the disclosure of which, could reasonably be expected to risk circumvention of

the law. After extensive review of the record at issue, I have determined that there is no further

non-exempt information that can be reasonably segregated and released without revealing

exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of November, 2018.

Michael G. Seidel
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia